IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CAROLYN DIAN MOORE,

    Plaintiff,

vs.          Case No. 09-2549-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 15, 2007, administrative law judge (ALJ) George M. Bock issued his decision (R. at 21-29). Plaintiff alleges that she has been disabled since October 1, 1993 (R. at 21). Plaintiff is insured for disability insurance benefits through December 31, 1998 (R. at 22). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 22). At step two, the ALJ found that plaintiff had the following severe

4

impairments: anxiety disorder, fibromyalgia (as of 2002), and migraine headaches. However, the ALJ found that plaintiff had no severe impairments prior to her date last insured, December 31, 1998. Thus, her claim for disability insurance benefits is denied at step two (R. at 22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 22-23). After determining plaintiff's RFC (R. at 27), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 27). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 28). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 28).

It should be noted that plaintiff is not represented by counsel in this case. A pro se plaintiff's pleadings are to be construed liberally and are held to a less stringent standard than pleadings drafted by lawyers. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). The court will recognize and consider a pro se plaintiff's claims despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. Id. But, it is not "the proper function of the district court to assume the role of advocate for the pro se

litigant." Id. Therefore, the court will not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues," Drake v. City of Ft. Collins, 927 F.2d 1156, 1159 (10th Cir. 1991); or "supply additional factual allegations to round out plaintiff's complaint or construct legal theory on plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**III. Did the ALJ err in his assessment of the opinions of a consulting psychologist, Dr. Todd Schemmel?**

In his decision, the ALJ mentioned that a consultative examination was performed on the plaintiff by Dr. Schemmel. The ALJ summarized the testimony of Dr. Schemmel as follows:

> Based on this evaluation, claimant was diagnosed with generalized anxiety disorder, panic disorder without agoraphobia, major depressive disorder, and given a GAF of 55, reflecting moderate psychological symptoms or limitations. It was felt she would be capable of understand [sic] and following simple instructions <u>and appeared to possess the adaptability or persistence for sustained gainful employment</u>, but would have problems with anxiety and depression.

(R. at 24, emphasis added). Defendant's brief stated that plaintiff argued that the ALJ did not consider the opinion of Dr. Schemmel that plaintiff was disabled. Defendant's brief then states the following:

> Dr. Schemmel...opined that Plaintiff's deficits did not preclude her ability to do simple unskilled work.

6

(Doc. 22 at 13).

Plaintiff's summary of the exhibits quoted a portion of the statement of Dr. Schemmel (Doc. 18-1 at 2). Dr. Schemmel's report states the following:

> In her current state, Carolyn is capable of understanding and following simple instructions consistently. Her attention span and concentration are adequate. If returned to a work setting, Carolyn would likely encounter interference from both her anxiety and depression. <u>She does not currently appear to possess the adaptability or persistence necessary for sustained gainful employment</u>.

(R. at 526, emphasis added).

Thus, contrary to the assertion of the ALJ, Dr. Schemmel clearly stated that plaintiff does <u>not</u> currently appear to possess the adaptability or persistence necessary for sustained gainful employment. The ALJ erroneously stated that Dr. Schemmel indicated that plaintiff appeared to possess the adaptability or persistence for sustained gainful employment when in fact Dr. Schemmel stated the exact opposite.[1] The ALJ has clearly misstated key medical opinion evidence. This error requires that the case be remanded in order for the ALJ to consider the fact

---

[1] Likewise, defendant's brief erroneously asserts that Dr. Schemmel opined that plaintiff's deficits did not preclude her ability to do simple unskilled work. Although Dr. Schemmel indicated that plaintiff could consistently understand and follow simple instructions, he clearly stated that she did not appear to possess the adaptability or persistence necessary for sustained gainful employment.

7

that Dr. Schemmel actually opined that plaintiff does <u>not</u> currently appear to possess the adaptability or persistence necessary for sustained gainful employment, and to weigh this opinion in light of the other evidence in the case.

The ALJ also mentioned another consultative examination by psychologist Dr. Neufeld. He summarized Dr. Neufeld's findings as follows:

> It was felt claimant's impairments would not prevent the performance of simple, unskilled work but it was also recommended that additional psychotherapy would be beneficial.

(R. at 25). Plaintiff references certain portions of Dr. Neufeld's report and assessment in her brief (Doc. 18-1 at 3). In fact, Dr. Neufeld summarized his findings as follows:

> <u>In the opinion of the examiner, these psychological difficulties likely would preclude the claimant from achieving optimal functioning in an occupational setting. However, when considered in isolation, it is the opinion of the examiner that these deficits do not preclude her ability to do Simple Unskilled Work</u>. The claimant would likely benefit from continued psychotropic medication, but psychotherapy would be beneficial in obtaining additional relief.

(R. at 617, emphasis added). Thus, Dr. Neufeld actually indicated that plaintiff's psychological problems would preclude plaintiff from achieving optimal functioning in an occupational setting, and then indicated that, when considered in isolation, these deficits would not preclude her ability to perform simple unskilled work. Thus, Dr. Neufeld's opinion that plaintiff could

perform simple unskilled work is clearly qualified.  When the case is remanded, the totality of Dr. Neufeld's opinion must be taken into consideration by the ALJ, and considered in light of the opinion of Dr. Schemmel that plaintiff cannot work.

**IV.  Did the ALJ properly evaluate the opinions of Dr. Martin, plaintiff's treating physician?**

Plaintiff also alleges error by the ALJ in his consideration of the opinions of treating sources (Doc. 18-1 at 5-6).  The ALJ gave no weight to physical RFC assessments from Dr. Martin, stating, in part, that the assessments by Dr. Martin "are based heavily on claimant's subjective complaints" (R. at 26).

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago

9

>     that an ALJ's assertion that a family doctor
>     naturally advocates his patient's cause is
>     not a good reason to reject his opinion as a
>     treating physician." Id. at 1253.

More recently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

>     The ALJ's finding that Dr. Covington's
>     opinion was based on claimant's own
>     subjective report of her symptoms
>     impermissibly rests on his speculative,
>     unsupported assumption. See Langley, 373 F.3d
>     at 1121 (holding that ALJ may not reject a
>     treating physician's opinion based on
>     speculation). We find no support in the
>     record for the ALJ's conclusion. Nothing in
>     Dr. Covington's report indicates that he
>     based his opinion on claimant's subjective
>     complaints, and the ALJ's finding ignores all
>     of Dr. Covington's examinations, medical
>     tests, and reports. Indeed, the ALJ's
>     discussion of Dr. Covington omits entirely
>     his March 22, 2001 examination and report.
>     His April 3, 2001 statement might well have
>     been based on his recent first-hand
>     examination and observation of claimant
>     during this examination, performed less than
>     two weeks earlier, rather than on claimant's
>     subjective complaints, as the ALJ speculated.
>     See Morales v. Apfel, 225 F.3d 310, 317 (3d
>     Cir.2000) (noting that the treating
>     physician's opinion may "reflect expert
>     judgment based on a continuing observation of
>     the patient's condition over a prolonged
>     period of time").

121 Fed. Appx. at 823-824.

The ALJ did not cite to any evidence in the record to support his assertion that Dr. Martin's assessments are based heavily on claimant's subjective complaints, and defendant fails to cite to any evidence in his brief to support the ALJ's

10

assertion.  In fact, Dr. Martin's assessments set forth the symptoms, signs, and laboratory findings in support of his opinions (R. at 634-635, 792-793).  Signs and laboratory findings are defined in the regulations as objective medical evidence.  20 C.F.R. §§ 404.1512(b)(1); 416.912(b)(1).  Therefore, on remand, the ALJ shall give further consideration to the opinions of Dr. Martin in light of the fact that there is no evidence that Dr. Martin relied heavily on claimant's subjective complaints.  The ALJ should consider the objective medical evidence (signs and laboratory findings) set forth by Dr. Martin in his physical RFC assessments.  The ALJ should also consider the objective medical evidence (signs and laboratory findings) set forth by the physician's assistant to Dr. Brooks (another treatment provider) in his physical RFC assessment (R. at 820).

The ALJ also gave no weight to the opinions of Dr. Martin because they were not supported by objective findings and there were no corroborating treatment notes that support his opinions (R. at 26, 27; Doc. 22 at 13).  On remand, the ALJ should consider SSR 96-5p, which states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.

In light of the errors regarding the evaluation of the medical source opinions noted above, the ALJ will need to make new RFC findings when this case is remanded. Although this issue was not raised by plaintiff, the court will note one matter that the ALJ should address on remand in order to expedite a resolution of this case. In his decision, the ALJ stated that he was giving controlling weight to the opinions of the state agency physicians and psychologists (R. at 27). Dr. Schulman provided a state agency mental RFC assessment which included 3 moderate limitations: 1) the ability to maintain attention and concentration for extended periods, 2) the ability to interact appropriately with the general public, and 3) the ability to respond appropriately to changes in the work setting (R. at 528-529). However, the ALJ's RFC findings state only that plaintiff is limited to simple, unskilled low stress work and cannot work with the public (R. at 27). Thus, without explanation, two of the moderate limitations accorded "controlling weight" by the ALJ were not included in the ALJ's RFC findings.

On remand, the ALJ should comply with SSR 96-8p, which states:

> The RFC assessment must include a narrative discussion describing how the evidence supports <u>each</u> conclusion, citing specific medical facts...and nonmedical evidence.
>
> ..........

> If the RFC assessment conflicts with an
> opinion from a medical source, the
> adjudicator must explain why the opinion was
> not adopted.

1996 WL 374184 at *7 (emphasis added). Furthermore, the ALJ should consider the court's holding in Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), in which the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions. The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments, and therefore the hypothetical question was flawed. Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.

**V. Did the ALJ err by failing to consider 3rd party statements in the record?**

The record contains 3rd party statements by plaintiff's father, son and former husband (R. at 93-119). Plaintiff argues that the ALJ should have given some weight to the statements from her father and son (Doc. 18-1 at 6). The ALJ never mentioned any of these 3rd party statements in his decision.

13

In <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments. The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." <u>Adams</u>, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." <u>Adams</u>, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. [citation to record omitted] Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony into his decision. "Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion[s] ... [are] supported by substantial evidence." <u>Threet</u>, 353 F.3d at 1190; <u>see also</u> <u>Baker v. Bowen</u>,

>           886 F.2d 289, 291 (10th Cir.1989) ("[W]here
>           the record on appeal is unclear as to whether
>           the ALJ applied the appropriate standard by
>           considering all the evidence before him, the
>           proper remedy is reversal and remand.").

Blea, 466 F.3d at 915.

According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony. Therefore, on remand, the ALJ shall consider the 3rd party testimony in accordance with the Blea decision.

**VI. Is plaintiff entitled to actual and punitive damages?**

In her brief, plaintiff requests actual and punitive damages (Doc. 18 at 3). However, 42 U.S.C. § 405(h) prohibits claims for actual and punitive damages against the Social Security Administration. Thus, the court lacks jurisdiction over plaintiff's request for money damages. Cunningham v. Social Security Administration, 311 Fed. Appx. 90, 92 (10th Cir. Jan. 27, 2009); see Schweiker v. Chilicky, 487 U.S. 412, 414, 108 S. Ct. 2460, 2463 (1988)(court held that the improper denial of Social Security benefits does not give rise to a cause of action for money damages against Social Security officials because such a remedy was not included in the elaborate remedial scheme devised by Congress).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with

this memorandum and order.

Dated this 30th day of November, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge